UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-271 (CRC) |
| v. : | |
| : | |
| SEAN WARD, : | |
| : | |
| Defendant : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Sean Ward to 14 days of incarceration. The government also requests that this Court order Ward to pay $500 in restitution, consistent with the plea agreement in this case.

**I. Introduction**

Sean Ward, 56 years old and a commercial painter, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

1

Ward pleaded guilty to one count of violating 40 U.S.C. §§ 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in any of the Capitol Buildings). The government's recommended sentence is warranted because Ward: (1) proceeded to the Upper West Terrace despite seeing police deploy tear gas against rioters outside the Capitol; (2) entered the Capitol through the Senate Wing Door at 2:14 p.m., approximately one minute after rioters first breached the Capitol at that location; (3) went inside a sensitive area, Senate Conference Room S145, where he took a celebratory photo; (4) traveled to the law library and the Crypt; and (5) remained inside the Capitol for a total of approximately 47 minutes before finally exiting through the South Door.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the U.S. Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Ward's crime support a sentence of 14 days of incarceration and $500 in restitution.

## II. Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* DE 7.

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant Ward's Role in the January 6, 2021 Attack on the Capitol*

Ward traveled to DC on January 5, 2021 with three friends to attend the former president's "Stop the Steal" rally at the Ellipse. Ward then went to the U.S. Capitol grounds with his friends. Ward's friends wanted to stay outside, so Ward went into the U.S. Capitol building alone at the time of the certification proceedings on January 6, 2021. Ward wore prescription glasses, a black coat, dark blue jeans, and multicolored boots as seen below. *See* Image 1. He also carried what appears to be black backpack with yellow zippers and a flag.



Image 1

Ward entered the U.S. Capitol building through the Senate Wing Door at 2:14 p.m., one minute after other rioters first breached the Senate Wing Door, shattering glass from adjacent windows. *See* Image 2.



Image 2

Ward then proceeded to Senate Conference Room S145. Inside that room, he lounged on a couch, and posed for a celebratory photo. *See* Image 3, below.

From there, Ward walked to the Supreme Court Chamber stairs at approximately 2:24 p.m. *See* Image 3.



Image 3

At approximately 2:25 p.m., Ward was at the law library door. *See* Image 4.



Image 4

Around 2:36 p.m., Ward was in the Crypt lobby. *See* Image 5.



Image 5

Ward then passed the Memorial Door and, eventually, walked through the Hall of Columns (Image 6), where he exited the Capitol through the South Door at approximately 3:02 p.m. after being inside the Capitol Building for approximately 47 minutes. *See* Image 7.


Image 6


Image 7

*Ward's Interview*

Ward was interviewed by the FBI on November 2, 2023 pursuant to his plea agreement. During the interview, he confirmed he traveled to Washington D.C. with friends on January 5, 2021. He said that he stood near the Washington Monument to hear speeches from President Donald J. Trump's rally at the Ellipse on January 6, 2021, then proceeded to the U.S. Capitol. He admitted that he witnessed violence and chaos at the barricades, and felt the residual effects of the pepper spray on rioters, but continued into the U.S. Capitol, nonetheless. He further admitted that once inside, he saw destruction and vandalism, but walked along with other rioters who chanted and screamed inside. Ward claimed that he entered the Capitol because he heard about an officer who was armed and nervous. He admitted that he remained inside the U.S. Capitol building and wandered around until law enforcement directed him to leave. He left the U.S. Capitol building grounds, reconnected with his friends outside, and returned to his hotel.

During the interview, Ward consented to the government's request to provide the government with the photos that were on his phone, and he subsequently produced these photos to the government. These photos include the photo of Ward lounging on a couch in Senate Conference Room S145, a sensitive space. *See* Image 8.



Image 8

*The Charges and Plea Agreement*

On August 10, 2023, the government charged Ward in a one-count Information with Parading, Demonstrating, or Picketing in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G). On August 28, 2023, pursuant to a plea agreement signed on July 20, 2023. Ward pleaded guilty to the Information. By plea agreement, Ward agreed to pay $500 in restitution to the Architect of the Capitol.

### III.  Statutory Penalties

Ward now faces a sentencing for violating 40 U.S.C. §§ 5104(e)€(2)(G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.  Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days of incarceration and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Ward's participation in that attack to fashion a just sentence, this Court should consider various

8

aggravating and mitigating factors. Notably, for a misdemeanor defendant like Ward, the absence of violent or destructive acts is not a mitigating factor. Had Ward engaged in such conduct, he would have faced additional criminal charges.

Among the most important factors in Ward's case are the time he spent inside the U.S. Capitol building, despite seeing the violence and chaos occurring there, his entrance into a sensitive area, Senate Conference Room S145, where he took a celebratory picture, and his entry into the U.S. Capitol building just one minute after other rioters broke through the Senate Wing Doors and adjacent windows. He has shown no remorse, understanding of, or contrition for his actions.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 14 days of incarceration in this matter.

### B. Ward's History and Characteristics

As set forth in the PSR, Ward's criminal history includes a conviction for Driving While Intoxicated in 1990. Also, Ward agreed to a precharge resolution of this matter which avoided the need to arrest him, initiate removal, and commence initial proceedings in the federal courts. His court proceeding was a self-surrender and initial appearance and change of plea in this matter.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Ward must also be deterred from future criminal activity, including any activity similar to that of January 6, 2021. Ward chose to spend 47 minutes in the U.S. Capitol building, entering just one minute after the initial Senate Wing Door breach, and shortly afterward, entering Senate Conference Room S145, a sensitive area.  Ward wandered around while fellow rioters were shouting, acting violent, and destroying property. He could have left at any time but chose to remain inside for 47 minutes, contributing to this chaos. In fact, Ward had three friends who chose

10

to remain outside, but Ward left them to enter the U.S. Capitol building. Ward directly contributed to the chaos inside the building and must be deterred from future criminal activity.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[2] This Court must sentence Ward based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Ward has pleaded guilty to Count One of the Information, charging him with violating 40 U.S.C. §§ 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

In *United States v. Savannah McDonald*, 21-CR-429, this Court sentenced to 21 days of incarceration a defendant who observed and cheered when a mob of rioters overran police on the Upper West Terrace Staircase, entered the U.S. Capitol building despite having been sprayed with tear gas three times by police officers, entered through the Senate Fire Door less than 20 seconds after it was opened by other rioters and spent approximately 40 minutes inside the U.S. Capitol building on January 6 while taking videos bragging about being the only girl to make it to the Senate and having been tear gassed by police officers.

In *United States v. Derek Sulenta,* 22-CR-340, Judge Chutkan sentenced to 14 days of incarceration a defendant who spent 47 minutes inside the U.S. Capitol building and bragged on social media that day about "breach[ing] the capital (sic) building" and called the events "wild."

In *United States v. Tammy Bronsberg,* 21-Cr-144, Judge Walton sentenced to 20 days' incarceration a defendant who entered Capitol after seeing tear gas and rioters breaking into the doors. The defendant entered the Senate Fire Door near the Parliamentarian's office at about 2:46 p.m., four minutes after that location was first breached (which the defendant observed). Although the defendant exited the Capitol 30 seconds later, she then entered the Capitol a second time through the Senate Wing Door and remained inside for 10 minutes. During this, the defendant entered Senate Conference Room S145 and drank alcohol while watching riot police attempt to remove others from building. Post-arrest, the defendant posted to Facebook that she would "do it again." The defendant had a 30-year-old DUI conviction, a conviction in 2017 for possession of drug paraphernalia, and a disorderly conduct conviction in 2017.

While Ward did not have any social media postings like in the above cases, he did remain in the U.S. Capitol building longer than the defendant in those cases, entered a sensitive area, and entered the U.S. Capitol Building just one minute after the initial breach.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.   **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

13

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Ward must pay $500 in restitution, which reflects in part the role Ward played in the riot on January 6.[4] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Ward's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 11.

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Ward to 14 days of incarceration and $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Ward's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

---

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

By:	s/ *Joseph Huynh*
JOSEPH H. HUYNH
D.C. Bar No. 495403
Assistant United States Attorney (Detailed)
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401-270